IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

AUDREY SHEPHERD,

    Plaintiff,

vs.                                              Case No. 4:12cv93-MW/CAS

GLENN A. BASSETT,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

On May 28, 2013, Defendant filed a motion for summary judgment supported by three exhibits. Doc. 34. The motion contains a "statement of facts," *Id.* at 2-8, which was deemed to be Defendant's statement of undisputed material facts, and the pro se Plaintiff was given guidance as to her obligation to respond to the motion. Doc. 35. Despite being provided several extensions of time, docs. 36-42, Plaintiff has not responded to the summary judgment motion. It is recommended that Defendant's unopposed motion, doc. 34, be granted for the reasons explained in detail below.

**I.**    **Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex

Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v.

Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Undisputed Rule 56 Evidence**

Plaintiff was employed by the Office of Attorney General (OAG) as an administrative secretary in October of 2007. Doc. 34 at 2, *citing* doc. 17 ¶ 4. Plaintiff's employment was terminated on February 19, 2009. *Id.* Defendant points out that Plaintiff's letter of dismissal, dated February 13, 2009, was from Assistant Deputy Attorney General Doug MacInnes, although it was signed by Defendant Bassett "on behalf of MacInnes." Doc. 34 at 2, *see* Ex. A (doc. 34-1 at 9).[1] Plaintiff was advised in the dismissal letter that the OAG had discovered that during the course of her employment, Plaintiff "had engaged in actions that violated Department of Corrections rules, regulations, and/or policies known to Plaintiff." *Id.* An investigation was undertaken which confirmed the violations, which in turn were violations of OAG policies, and the investigation also discovered additional OAG policy violations.[2] *Id.* The violations listed in the dismissal letter were:

---

[1] All exhibits are those attached to the summary judgment motion, doc. 34, as Plaintiff did not submit any evidence.

[2] The Inspector General's written report which confirmed the violations is attached as Ex. B, Attachment 2.

(a) In February of 2008, Plaintiff registered her own non-profit corporation, Prisoners For Christ Outreach Ministry, without first seeking permission from her Bureau Chief, as required by OAG policy. The corporation was designed to assist inmates in disputing their criminal convictions, contrary to the interests of the OAG. The OAG has a criminal appeals division whose efforts are aimed at representing the state against prisoners challenging their sentences. Plaintiff also used her work computer to prepare documents for her ministry and personal interests, despite acknowledging in writing that she had read and understood the applicable policies. (Ex. A, Attachment 1, p. 3, 4)[

(b) On January 13, 2009, Plaintiff sent a letter to the grandmother of a victim of an inmate's sexual assaults. Plaintiff identified herself as an OAG employee and falsely stated that she was the prisoner's sister. Plaintiff further stated that, in her opinion, the evidence against the inmate was fabricated, and that if the grandmother helped the inmate, the inmate would see that nothing happened to the grandmother's daughter, who apparently testified against the inmate. The OAG determined that Plaintiff had improperly used the name of the OAG. The letter communicated a threat and amounted to possible extortion, which was clearly inappropriate, conduct unbecoming of a public employee, and an abuse of her position. (Ex. A, Attachment 1, p. 2; Attachment 2, p. 9);

(c) Plaintiff's January 13 letter was accompanied by a letter from the inmate to the grandmother that was typed by the Plaintiff. The letter, which was sent against DOC policies concerning correspondence by inmates, requested the grandmother to question her grandson (the sexual assault victim) about the assault. The inmate claimed he would sign a waiver of prosecution to prevent the prosecution of the grandmother's daughter for lying. (Ex. A, Attachment 2, p. 10). The grandmother felt victimized by the letters, and filed a complaint against Plaintiff and the inmate with the local police department. (Ex. A, Attachment 2, p. 3). The OAG considered Plaintiff's actions an abuse of her position, and completely inappropriate. Plaintiff brought disrepute to the OAG, which has a division dedicated for providing assistance to crime victims. (Ex. A, Attachment 1, p. 3);

(d) Plaintiff sent a letter to a minister requesting assistance for the inmate. She again improperly referred to herself as an OAG employee. She described the inmate as "Minister Williams who is my brother and Ministry Co-partner here at Prisoners For Outreach Ministry." The OAG considered Plaintiff's actions conduct unbecoming an employee, untruthful, and a misuse of her position. (Ex. A, Attachment 1, p. 3);

(e) Plaintiff frequently identified herself as an OAG employee in conversations with a DOC prison warden and provided her OAG telephone number to contact her. By using her status an OAG employee, Plaintiff attempted to obtain

preferential treatment from the warden. (Ex. A, Attachment 1, p. 3; Attachment 2, p. 13);

(f) On February 2, 2009, Plaintiff became irate, disrespectful, and abusive to the warden, including referring to him and DOC personnel as "ass holes." The warden removed Plaintiff from volunteer visitor status after she opened a bank account for the inmate. (Ex. A, Attachment 1, p. 3; Attachment 2, p. 13);

(g) Plaintiff violated DOC rules on numerous occasions, which included mailing items to the inmate that were deemed contraband. This constituted conduct unbecoming an OAG employee. (Ex A, Attachment 1, p. 4; Attachment 2, p. 12-16); and

(h) Plaintiff sent letters to the inmate using a false name to disguise her identity, and on another occasion used the letterhead "Shepherd & Associates Paralegal Services," thus indicating she had started a second business without OAG approval. (Ex. A, Attachment1 p. 4; Attachment 2, p. 40, 55).

Doc. 34 at 2-4. MacInnes concluded that Plaintiff's conduct violated nine policies of the OAG, warranting dismissal: "(1) failure to follow instructions; (2) insubordination; (3) lack of truthfulness; (4) violation of laws, rules, regulations or policies; (5) unauthorized use of state property, equipment, or personnel for any purpose other than official state business; (6) unauthorized outside employment; (7) conduct unbecoming a public employee; (8) misuse of position or unauthorized use of agency authority; and (9) threatening and/or abusive language." *Id.* at 4-5.

During the course of the investigation, Plaintiff admitted to many of the violations. *Id.* at 5; *see also* doc. 34-2. (Ex. B, Attachment). Plaintiff admitted that she had incorporated a "ministry" without OAG approval to engage in a second business; that she altered an inmate's prison photo I.D. to show him in a suit and tie instead of his prison garb; that she used her work computer to help locate a potential witness who the inmate claimed would help exonerate him from his conviction; that she called correctional institutions as part of her ministry and identified herself as being from the

Attorney General's Office, leaving messages to return calls to her at the OAG; that she sent letters to the grandmother of the inmate's minor sexual assault victim on behalf of the inmate intending to scare the grandmother because she believed the grandmother's daughter (the inmate's wife) had lied about the molestation. Doc. 34, Ex. B. Among other admissions, Plaintiff also acknowledged that she drafted court motions handwritten by the inmate under the name "Shepherd and Associates Paralegal Services." Doc. 34 at 5-6.

After a pre-determination hearing, it was determined that there was just cause to terminate Plaintiff's employment. *Id.* at 7. Plaintiff was dismissed from her employment at the Attorney General's Office on February 19, 2009, in a letter signed by Cathy Christensen. *Id.*

Thereafter, Plaintiff filed an appeal of her dismissal with the Public Employees Relations Commission. *Id.* Eventually, on April 30, 2009, Plaintiff and the OAG entered into a Settlement Agreement and General Release. *Id.*; *see* Ex. A, Attachment 4 (doc. 34-1 at 81-85). "Defendant signed the agreement in his capacity as the OAG's attorney." *Id.* "In exchange for the OAG allowing Plaintiff to resign and placing the dismissal documents in an unsealed envelope marked 'void' within Plaintiff's personnel file, Plaintiff agreed to drop her PERC appeal not to bring any future claims against the OAG concerning her employment and/or dismissal." *Id.* Notwithstanding, the evidence reveals that Plaintiff appealed the denial of unemployment benefits. The

Unemployment Appeals Commission found that Plaintiff was not disqualified from receiving unemployment benefits. Ex. C (doc. 34-3).[3]

**Analysis**

Plaintiff's complaint alleged that she was improperly terminated and that Defendant engaged in religious discrimination. Doc. 17. Plaintiff further alleged that Defendant retaliated against her by terminating her employment. In addition, Plaintiff contends she was denied due process prior to her termination. *Id.* Each of these claims are addressed below.

**A.    Due Process**

The Due Process Clause of the Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process "entitles an individual to notice and some form of hearing before state action may finally deprive him or her" of a protected interest. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). It is not clear on this record that Plaintiff had a constitutionally protected property interest in her public employment.

In the employment context, an employee must have a legitimate and objective entitlement to continued employment based on ordinances, rules, regulations, or other mutual understandings promulgated by the government. Sullivan v. Sch. Bd. of Pinellas Cnty., 773 F.2d 1182, 1185 (11th Cir. 1985), *cited in* Amador v. Town of Palm Beach, 517 F.App'x 834, 837-838 (11th Cir. 2013). "The general rule under Florida law is that -

---

[3] A decision that Plaintiff was entitled to unemployment benefits is unrelated to a determination that there was just cause to terminate one's employment. *See* Ex. C.

absent a statute, ordinance, or contract providing otherwise - employees who are employed for an indefinite term are at-will employees who may be terminated for any reason at any time." Donnell v. Lee Cnty. Port Auth., 509 F.App'x 903, 905 (11th Cir. 2013) (citations omitted). To the degree Plaintiff might have argued that the Florida's Public Employment Relations Act, Fla. Stat. § 447.201 et seq., gives her, a "public employee," a protected property interest in her continued employment, that argument has been rejected. *Id.* Plaintiff has not demonstrated that she had a protected interest in her continued employment which entitled her to the protections of the Due Process clause.

Moreover, even ignoring for present purposes whether Defendant Bassett was the decision maker for the Attorney General's office, there is no evidence that Plaintiff was denied due process. Rather, the evidence presented reveals that prior to her termination, Plaintiff was provided a pre-determination letter on February 13, 2009, which outlined the basis for her termination. After receiving the letter, Plaintiff requested a pre-determination conference. That conference was held on February 18, 2009, and Plaintiff was provided the opportunity to respond to the allegations. After considering her response and the evidence presented from the investigation, it was determined that Plaintiff's employment should be terminated. Plaintiff then was provided a post-termination appeal to the Public Employee Relations Commission. Thus, Plaintiff was provided with due process prior to her termination and after. Summary judgment should be granted in Defendant's favor on this claim.

**B.    Retaliation**

Although not addressed by the Defendant, Plaintiff raised a claim for retaliation. *See* doc. 17 at ¶15.  To establish a prima facie case of retaliation, Plaintiff must show that she engaged in a protected activity and suffered an adverse employment action, and that the protected activity and adverse employment action were causally related. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002).  Plaintiff has not demonstrated that she engaged in any protected First Amendment activity such as filing an E.E.O.C. claim or a lawsuit.  Thus, this claim must fail as a matter of law and summary judgment granted in Defendant's favor.

**C.    Discrimination**

Plaintiff brings her claim of religious discrimination under § 1983 and not Title VII. Doc. 17.  Nevertheless, whether a discrimination claim is brought under the Equal Protection Clause, or pursuant to 42 U.S.C. § 1981, or under Title VII, it is "subject to the same standards of proof and employ the same analytical framework." Bryant v. Jones, 575 F.3d 1281, 1296, n.20 (11th Cir. 2009).  To establish a prima facie case of discrimination, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside Plaintiff's class more favorably; and (4) she was qualified for her employment.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Plaintiff has not demonstrated a prima facie case because she has not shown that persons with non-religious viewpoints (or who were not volunteer chaplains) were treated more favorably than she was.  Furthermore Plaintiff has not shown that any other employees committed similar rule and policy violations and were treated

differently than Plaintiff was treated. Summary judgment should be granted in favor of the Defendant on the Equal Protection claim as well.

**Recommendation**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 34, be **GRANTED**, and that judgment be entered in Defendant's favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2014.

S/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**